Cameron, J.
delivered the Judgment of the Court*.
*418 The widow’s claim to the benefit of the act of 1796, ch. 29, depends entirely on the husband’s dying intestate generally. Where he leaves a will, and she dissents to the provision made for her by it, such dissent, only produces a partial intestacy as to her.
The words of the act are “ where a man shall die intes- “ tate, leaving a widow,” &c. Here the husband did not die intestate. He disposed of all his estate by will duly executed and published; and thereby made provision for his wife. He could not foresee that she would be dissatisfied with that provision and claim the privilege of dissenting from it.
According to the construction of the act contended for in behalf of the petitioner, it is not the omission of the husband to make and publish a will in his lifetime, but the act of the widow, which renders him intestate. By her acquiescence in the will, the husband dies testate; her dissent produces intestacy. It depends wholly on her conduct, after the death of the husband, and after his will is admitted to probate, whether he is to be considered as having died testate or intestate.
This surely is not such a dying intestate, as is contemplated by the act under consideration. In support of this opinion, let it be further observed, that the act directs that " where a man shall die intestate, leaving a widow, she may “ take into her charge and possession so much of the crop, “ &c. then on hand, as may be necessary, &c. until letters of “ administration shall be granted,” &c. Now the Legislature could never have intended to interfere with the will of the testator, or the rights of the executors, by authorising the widow to take into her possession that property which the law, operating on the will of the testator, authorised them alone to take possession—yet the construction of the act *419 contended for in behalf of the petitioner, would produce that effect.
Sales of the perishable estate of intestates usually take place immediately after administration is granted. The allowance for the widow and family should be set apart before such sale takes place. Hence she is required by the act to exhibit her petition “ at the same court when administration is granted.” Yet if by entering her dissent to the will, she can entitle herself to a year’s allowance out of the crop, &c. she may do it six months after the probate of the will; when, in all probability, the executors have sold the perishable estate and disposed of the proceeds according to the will of their testator. Out of what will her year’s support, in such case, be allotted?
The act of 1784, ch. 22, authorises the widow to enter her dissent within six months after probate of the will, and enacts, “notwithstanding her dissent, if the jury find and “ return that ‘ she is as well provided for by the will as by “ taking that allotted to her by law in case of her dissent,' “ she shall be therewith content.” Suppose a year’s provision allotted to the petitioner, according to the construction of the act contended for in her behalf, and that the jury to be empannelled pursuant to the directions of the above recited act, should find that the legacy given to her by the will is equal in value to the distributive share she would take under the act of Assembly with which, in the words of the act, she shall be content, it would then appear that the widow of a man, not dying intestate either generally or partially (as respects his wife) had received the benefit of the act intended for those only whose husbands die intestate: and that she had received a portion of her husband’s estate, not allotted to her by his will, or justified by the act in question.
*420 Such difficulty can only be avoided, by bearing in mind, that the Legislature never intended that the acts of 1784 and 1791 on the same subject, and the act of 1796 (the act in question) on a different subject, should be blended together in their operation and effects.
A majority of the Court is of opinion, that the widow of a man dying and leaving a last will, cannot, by her dissent to such will, entitle herself to the benefits of the act of 1796, ch. 29, in addition to those conferred on her by the acts of 1784, ch. 22, and 1791, ch. 22.—Wherefore Judgment for defendants.
Seawell, J.
I cannot yield my assent to the opinion of a majority of the Court, in this case.
I think we are disregarding the obvious meaning of the Legislature through a ceremonious respect to the words they have used.
In the exposition of all instruments, the intention of the makers is the only guide. And as regards statutes, it is a very ancient rule, to consider the old law, the mischief, and the remedy. And Lord Coke has ventured to assert, that it is the office of Judges always to make such construction as shall repress the mischief and advance the remedy, according to the true intent of the makers. Heydon's case, Co. Rep. and Sir E. Plowden, who is denominated by Lord Coke a grave and learned apprentice of the law. In a nota bene to the case of Eyston v. Studd, 2 Plow. 465. it is said, “ that it is not the words of the law, but the internal sense “ of it, that makes the law: that the law consists of two “ parts, a body and soul; that the letter is the body, the “ sense and reason the soul,—qua ratio legis est anima legis; “ and that the law may be resembled to a nut, which has a “ shell and kernel within; the letter representing the shell, “ the sense the kernel. And as you will be no better for the *421 “ nut if you make use only of the shell, so you will receive “ no benefit from the law if you rely only on the letter.” And Chief-Justice Brook, another venerable sage, in Hill v. Grange, reported by Plowden, in speaking of the construction of statutes, says, “ that when an act is made to remedy a mischief, that in order to aid things in the like degree, one action may be used for another, one thing for another, and one person for another, notwithstanding that in some respests the thing is penal As in the action of waste given by stat. Glou against termers for years, by equity it is extended to him who holds for a half year; so the stat. of Westm. which gives an action against a jailor who lets out one committed for arrears of account, is extended to a case of commitment for debt. So the stat. Wilm. which gives a cui vita after coverture dissolved by death, extends to a case of divorce. So one thing for another, as an elegit de mediatatum suœ terrœ, which is given by stat. yet it extends to a moiety of a rent. And in respect to persons, the stat. 4 Ed. 3. gives an action de bonis asportatis, to executors, yet it is extended to administrators.”
Servilely treading in the footsteps of these great fathers of the law, let us pursue their mode, and first enquire, how the old law stood, what was the mischief, and what the remedy the Legislature has applied? What the law was, and what the mischief intended to be remedied, are recited in the act itself. We are not left at large to conjecture or put in difficulty to collect from the remedy what was the disease; but the Legislature themselves, in an act, the title of which is to make “ further provision for the widows of intestates,” recites in the preamble, “ that it is in the power of administrators to dispose of the whole of the crop and provisions of the deceased, and thereby deprive the widow of the means, of subsistence for herself and family.” To remedy which mischief they declare, “ that whenever any person shall die *422 intestate, the widow may petition and she shall he entitled to a year’s support.”
By the act of 1784, it is declared, that if any person shall die intestate, or make such provision by will as shall not be satisfactory to the wife, upon signifying her dissent, she shall he endowed of a third part of the lands and a child’s part of the personal estate,—placing the widow dissenting, precisely in the same situation as if no will had been made.
In the present case the widow dissented, and on her petition for the year’s support, in virtue of the act of 1796, she is told, you are not within the meaning of that act, because your husband made a will, and the act only relates to the widows of those who died intestate.
Now it is very clear that the mischief which the Legislature intended to remedy, was the inadequacy of the provision allowed by law; and that the petitioner’s case is precisely such a one; that is to say, she is a widow who has received only what the law has provided for her, petitioning in virtue of the act of 1796, which act declares that its design is, to make such widows a further provision If her case then, comes within the mischief intended to be remedied, it would seem, that inasmuch as it was the mischief the Legislature was aiming at, that she ought, by an equitable construction, to receive its benefit. The statute de bonis asportatis only enabled the executor to sue; yet, for the sake of reaching the mischief, it was extended, by construction, to an administrator. But let us examine if this difficulty in reconciling this case with the words of the act of 1796 cannot be gotten over. For if it can be shown, that the husband did die intestate, the petitioner will then be within both the design and words of the act—and this, to me, has not half the difficulty, as making an executor mean administrator, a rent issuing out of land mean the land itself or a dissolution of marriage by death a dissolution by divorce; all of which have been done.
*423 When a wife dissents to the provision made by a husband in his will, he thereby, as to her, dies intestate, in the same manner as he would do in case of a lapsed legacy not otherwise guarded, or as to real estate in case of a will with one witness; and whether as to the rest of the world, the husband died testate or intestate, is of no importance in the present inquiry. It can only be material, when a petitioner has been already provided for, and then only to prevent, as it were, a double portion; one from the bounty and duty of the husband, the other which the law has provided for those who have no other resource.
If the act is to receive this nice construction, what should we do with a case where a husband, possessed of a large estate, made no other will than barely to appoint executors who should refuse to qualify, and the widow should petition for her year’s support? I can hardly suppose her petition would be rejected. And how does the present case differ from that in principle? The petitioner has received nothing from the bounty of the husband; he either omitted her entirely in the will or made such provision as she chose not to rely on, and has applied to the law. She has no other subsistence for herself or family than that which the law has allowed her, and this she may be kept out of for two years by the executor;—and as to the personal estate, that even may be swept away by creditors; and she is, in the mean time, either to beg or starve. Such a construction, therefore, seems to me at variance both with the letter and spirit of the act.
If it be asked, what is the situation of a widow who does not dissent, where the debts against the estate are sufficient to swallow up the assets? I answer, she acts with her eyes open. She may rely if she chooses, upon the provision made by the husband; and if she is doubtful of that, she ought to dissent, and rely upon the law. The maintenance allotted *424 her is exempted from the demands of creditors and claimants.
It is to me matter of regret, that any case should arise, in the determination of which, a difference of opinion should prevail; and greatly as I at all times respect the opinions of my brethren, when in opposition to my own, I cannot from mere respect, without conviction, subscribe to a construction, in my understanding, so much at variance with the true meaning of the act.——A majority being of a different opinion, there must, however, be judgment that the petition be dismissed.

 Taylor, C. J. dubitante.